**France Isabelle Ter Weele WINE**

v.

**Jeffrey Michael WINE.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

February 8, 2007 Session.

May 18, 2007.

Permission to Appeal Denied by Supreme Court Oct. 22, 2007.

---

Dana C. McLendon III, Franklin, Tennessee, for the appellant, Jeffrey Michael Wine.

Robert Todd Jackson, Brentwood, Tennessee, for the appellee, France Isabelle Ter Weele Wine.

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and PATRICIA J. COTTRELL, JJ., joined.

## OPINION

The father of three children appeals the denial of his post-divorce petition to reduce child support and for Tenn. R. Civ. P. 60.02(5) relief from his alimony *in solido* obligation. He was earning $80,000 a year when the parties entered into the Marital Dissolution Agreement in July 2004 but was fired two weeks prior to the entry of the Final Decree of Divorce on September 27, 2004. Two months later, he was indicted for theft of property over $60,000, and remained in custody for one month until family posted his bond. Thereafter, he filed a petition to reduce child support and for Rule 60.02(5) relief from his alimony *in solido* obligation. The mother admitted there was a significant variance but opposed the petition contending the father was willfully underemployed because the conduct for which he was fired was willful. The trial court denied the petition to reduce child support upon a finding the father failed to prove the significant variance was not caused by his willful and voluntary underemployment. We reverse the denial of the petition to reduce child support because the trial court erroneously placed the burden on the father to prove that he was not willfully underemployed when the burden of proof was on the mother. We affirm the denial of Rule 60.02(5) relief because the father's decision to assume the alimony *in solido* obligation was a free, calculated, and deliberate choice, and his failure to anticipate a significant change in his earning capacity did not constitute a circumstance for which Rule 60.02(5) relief should be granted.

### I. FACTS AND PROCEDURAL HISTORY

France Isabelle Ter Weele Wine, Mother, and Jeffrey Michael Wine, Father, were married for nine years, during which time they produced three children. They divorced in 2004, at which time all of their children were under the age of six. When

the parties entered into their Martial Dissolution Agreement (MDA) on July 22, 2004, Father was employed as the General Manager of the Old Natchez Country Club earning $80,000 per year, and Mother worked in the home as a homemaker.[1] Father's child support obligation was set pursuant to the Guidelines at $2,000 per month. The MDA also stated the parties' agreement that Father would pay alimony *in solido* in the amount of $132,000 over four years at the rate of $2,000 per month for the first twenty-four months, $3,000 per month for the next twelve months, and $4,000 for the final twelve months. The MDA was dated July 22, 2004; however, the Final Decree of Divorce was not entered until October 18, 2004.

Father's financial picture changed dramatically within three months of entering into the MDA and two weeks prior to the entry of the Final Decree of Divorce. On September 27, 2004, he was fired by his employer, the Old Natchez Country Club, for alleged financial improprieties. His efforts to obtain similar employment over the next two months proved unsuccessful. To make matters worse, on December 13, 2004, he was indicted for theft of property over $60,000. When he was booked on the charges on December 15, 2004, he was unable to post bail and, therefore, was taken into custody where he remained until January 12, 2005, when his family and friends posted his bond.

Thereafter, Father renewed his search for employment, but with no success. He attributes his lack of success to being snubbed by the close-knit country club industry in which he had worked for years.

Having fallen behind in his child support and alimony obligations and seeing no end to his financial problems, he filed a Petition to Modify Support Obligations and Enter Permanent Parenting Plan on February 7, 2005, in which he contended his employment problems constituted a significant variance which drastically impeded his ability to meet his child support and alimony obligations.[2] He requested, *inter alia*, modification of his child support obligations to reflect his current income in accordance with the Child Support Guidelines and modification of his additional support obligations, including alimony.

In her answer to the Petition, Mother admitted there had been substantial change of circumstances and a significant variance; however, she contended that all such changes were "directly caused by the misconduct, adultery, lying, deceit and criminal activity of [Father]." She also disputed Father's claim that he had made every diligent effort to find employment. Contemporaneous with the filing of her Answer, Mother filed a Petition for Criminal Contempt and to Modify Permanent Parenting Plan. In her petition, she stated that Father was five months behind in his child support and alimony payments. After various additional pleadings and motions, the court set all pending matters for a hearing on April 25, 2005.[3]

Ten days prior to the scheduled hearing, Father delivered two cashier's checks totaling approximately $17,000. The two checks represented the past due child support and alimony obligations through February 7, 2005. At the time the checks were delivered, Father had not secured

1. As a full time homemaker, Mother had no income.

2. In Father's original petition, he contended a substantial and material change of circumstances had occurred. On April 13, 2005,

Father amended his petition to reflect the revisions to the child support guidelines.

3. The hearing was originally set for April 25, 2005, but by an Agreed Order, the court continued the hearing until June 7, 2005.

employment. As he explained later, he was wholly dependent on his new wife and his family for financial support.

After months of unemployment, he began working in May of 2005 at a restaurant owned by his new wife earning an annual salary of $35,000. In spite of the new employment and an improved financial picture, Father was earning less than $3,000 per month and, therefore, did not have sufficient income to pay $4,000 per month in child support and alimony.

The hearing which had been originally set for April was continued by agreement to June 7, 2005. When the matter came on for hearing on June 7, Father and Mother testified; however, on the advice of counsel, Father refused to answer any questions that pertained to the pending criminal charges and his former employment at the Old Natchez Country Club, including specifically the reasons for his termination. Following the hearing, the court took the matter under advisement. Three weeks later, on June 28, 2005, the court entered an Order in which it concluded that Father had failed to prove by a preponderance of the evidence a sufficient or substantial change of circumstances that entitled him to any modification of the child support.

As for Mother's Petition for Contempt, the court found that Father was not in criminal contempt for failing to pay child support, but that he was guilty of criminal contempt for failing to pay alimony. The trial court explained that this finding was based on the fact that Father: (1) hired a criminal defense attorney to defend him against the theft charges for a retainer fee of $30,000; (2) made bond in the amount of $150,000 for which the premium was $15,000; (3) cashed a $10,303 check from a 401(k) account; and (4) had a salary of $35,000. As the trial court further explained, "he had access to funds sufficient to meet his said alimony obligation...."

Father appeals contending the trial court erred by denying his petition to modify his child support and alimony obligations. For her part, Mother contends she is entitled to recover her expenses and attorney's fees incurred on appeal.

## II. STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn.Ct.App.2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn.Ct.App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn.Ct.App.1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn.1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Walton v. Young,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn.Ct.App.2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

## III. MODIFICATION OF CHILD SUPPORT

The modification of child support is governed by Tenn.Code Ann. § 36–5–101(g) (2006). *See Kaplan v. Bugalla,* 188 S.W.3d 632, 636 (Tenn.2006). Since 1994,

the initial inquiry in a petition for child support modification is "whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *See Huntley v. Huntley,* 61 S.W.3d 329, 335 (Tenn.Ct.App.2001); *see also Kaplan,* 188 S.W.3d at 636. The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists. *Turner v. Turner,* 919 S.W.2d 340, 345 (Tenn.Ct.App. 1995).

Even though a significant variance is proven, the trial court may deny a petition for modification of child support if the variance is the result of willful or voluntary underemployment. The burden of proving that a significant variance is the result of willful or voluntary underemployment is on the party opposing the modification. *Demers v. Demers,* 149 S.W.3d 61, 69 (Tenn.Ct.App.2003); *Richardson v. Spanos,* 189 S.W.3d 720, 727 (Tenn.Ct.App. 2005). Therefore, once the petitioner satisfies his burden of proof that a significant variance exists, the burden shifts to the parent opposing the modification to prove the variance is the result of willful or voluntary underemployment. *Demers,* 149 S.W.3d at 69; *Richardson,* 189 S.W.3d at 727.

It is undisputed that Father earned $80,000 per year at the Old Natchez Country Club until he was fired in September of 2004. It is also undisputed that his highest compensation since then has been $35,000. Moreover, Mother admits the existence of a significant variance. Accordingly, Father has satisfied his burden of proof to justify a modification of his child support obligation.

Mother contends the significant variance was "directly caused by the misconduct, adultery, lying, deceit and criminal activity of [Father]." Therefore, the dispositive issue is whether the significant variance is

the result of Father's willful or voluntary efforts to be underemployed.

The record before us reveals that the trial court placed the burden on Father to prove that he was not willfully or voluntarily underemployed. This is evident from the following statement made by the trial court on the day of the hearing:

To prove a change of child support, you've got to show by a preponderance of the evidence there's been a material change of circumstances not brought about by your own choosing; that you're not voluntarily unemployed or underemployed.

[Father has] not given me enough evidence to cause me to find by a preponderance of the evidence that there's been the kind of change of circumstances that's not been brought about by his doings. And so he's not met his burden of proof, as far as I'm concerned, to change an agreed-upon judgment.

Placing the burden on Father to prove that he was not willfully or voluntarily underemployed was an error of law. This is because the burden of proof was on Mother to establish that he was willfully underemployed. *Demers,* 149 S.W.3d at 69; *Richardson,* 189 S.W.3d at 727.

If the trial court correctly states the legal standard, then findings as to whether the facts meet the legal standard are accorded the appropriate deference. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996). "If, however, the trial court misstates the governing law, an appellate court need not afford full deference to those factual determinations that depend upon, or incorporate, the erroneous rule of law." *Id.* (citing *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1269 (7th Cir.1991) (discussing the principle in the context of a hostile work environment claim)). The appellate courts may dis-

count a trial court's determination if it is based on an erroneous application of a recognized legal principle. *See Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct.App.1999) (referring to a credibility determination); *see also Richardson v. Miller*, 44 S.W.3d 1, 21 (Tenn.Ct.App.2000) (holding that appellate courts may overturn a trial court's ruling if it is based on an incorrect legal standard). Having determined the trial court incorrectly placed the burden of proof on Father to prove he was not willfully or voluntarily underemployed, we will examine the evidence and make our own determination of where the preponderance of the evidence lies.

■ Father provided evidence of his repeated efforts to attain the best employment that was available to him under the circumstances.[4] Moreover, a review of the record reveals that Mother presented no evidence to show that Father's underemployment was willful or voluntary. Instead of presenting evidence, she relies solely on the catchall provision in Tenn. Comp. R. & Regs. 1240–2–4–.04(3)(a)(2)(ii) (2005) to contend that the alleged and yet unknown conduct that led to his firing and indictment constitutes willful or voluntary underemployment.

Tenn. Comp. R. & Regs. 1240–2–4–.04(3)(a)(2)(ii) provides a list of factors to be considered to determine willful underemployment. The section upon which Mother relies reads as follows:

A determination of willful and/or voluntary under or unemployment is not limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support. *The determination may be based on any intentional choice or act that affects a parent's income.*

Tenn. Comp. R. & Regs. 1240–2–4–.04(3)(a)(2)(ii)(I) (emphasis added).

The most significant aspect of the record before us is the lack of evidence regarding Father's alleged willful conduct to avoid or reduce the payment of child support. Simply stated, the record is devoid of evidence pertaining to the yet unknown conduct that allegedly led to his firing by the Old Natchez Country Club. Mother presented no evidence to support her claim, and Father refused to answer any questions concerning the conduct that allegedly led to his firing. When Mother's counsel attempted to question him on the subject, Father asserted his Fifth Amendment right to not incriminate himself.

We note that the indictment was presented to the court; however, it proves nothing other than he has been accused of committing the crime of theft of property over $60,000. This is because the indictment does not serve as proof of guilt, nor does it constitute competent evidence to prove that he engaged in the conduct alleged in the indictment. *See* T.P.I.—Crim. § 1.05; *see also* Tenn.Code Ann. § 40–13–101(a) (2006); *State v. Davidson*, 171 Tenn. 347, 103 S.W.2d 22 (1937); *Caldwell v. State*, 164 Tenn. 325, 48 S.W.2d 1087, 1096 (1932).

We therefore conclude that the only competent evidence in the record on this issue is that Father was fired by the Old

---

**4.** Mother also contends Father did not diligently look for suitable employment. We have reviewed the record and find no merit to this argument. Father introduced a detailed time line of his employment search activity from October 8, 2004 through March 21, 2005, which reveals that Father pursued employment and business opportunities with at least ten bed-and-breakfast type facilities, two "smoothie" companies, numerous golf courses, and various businesses accepting applications for managers or sales positions. Father produced details of specific meetings, telephone and e-mail conversations, and employment negotiations, which Mother failed to contradict or impeach.

Natchez Club and that he was indicted for theft of property over $60,000. Moreover, the record reveals that this is the only job from which Father has been fired since the parties entered into the MDA, and he has attempted to find suitable employment but has only been able to obtain employment paying a salary of $35,000 a year. These facts, without more, are wholly insufficient to support a finding of willful underemployment even with the 2005 adoption of the catchall provision in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I).

The mere fact Father lost one job, albeit a good job, for alleged improper conduct is not sufficient to constitute the type of "intentional choice or act" contemplated in the 2005 revision to Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I). We therefore conclude that Mother failed to carry her burden of proof to establish that Father is willfully or voluntarily underemployed.

We therefore find the trial court erred by denying Father's petition to modify child support and, therefore, remand the issue to the trial court to set child support pursuant to the Guidelines based upon Father's current income.

## V. MODIFICATION OF ALIMONY *In Solido*

Father filed an Amended Petition to Modify Support Obligations to assert a prayer for equitable relief pursuant to Tenn. R. Civ. P. 60.02(5), alleging the existence of "extraordinary circumstances and extreme hardship" as the justification for equitable relief. The trial court denied Father's Rule 60.02(5) amended petition to modify the agreed upon award of alimony *in solido*. Father contends the denial of his Rule 60.02(5) petition was error.

■ Rule 60.02 relief addresses itself to the sound discretion of the trial court. *Day v. Day*, 931 S.W.2d 936, 939 (Tenn.Ct. App.1996) (citing *Underwood v. Zurich*

*Ins. Co.*, 854 S.W.2d 94, 97 (Tenn.1993)). We review the grant or denial of such motion by an abuse of discretion standard. Accordingly, a Rule 60.02 motion for relief from a judgment is within the sound discretion of the trial court, and the court's ruling on a Rule 60.02 motion may not be reversed on appeal unless it is determined that the court abused its discretion. *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 92–93 (Tenn.Ct.App.2000) (citing *Underwood*, 854 S.W.2d at 97 (Tenn.1993); *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn.1991); *Toney v. Mueller Co.*, 810 S.W.2d 145, 147 (Tenn.1991); *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 70 (Tenn.1985); *Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn.Ct.App.1998); *Day*, 931 S.W.2d at 939; *Ellison v. Alley*, 902 S.W.2d 415, 418 (Tenn.Ct.App.1995)).

■ Alimony *in solido*, like the division of marital property, is not modifiable as a matter of law once the order is final. *See Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn.2001); *Day*, 931 S.W.2d at 940; *Towner v. Towner*, 858 S.W.2d 888, 892 (Tenn.1993); *Jones v. Jones*, 784 S.W.2d 349, 351 (Tenn.Ct.App.1989). Moreover, alimony *in solido* is not modifiable even upon a showing of changed circumstances, including such events as remarriage or a change in fortunes. *See Bryan v. Leach*, 85 S.W.3d 136, 146 (Tenn. Ct.App.2001). A party, however, may seek relief from a final decree pursuant to Rule 60.02 under a limited set of circumstances. In pertinent part, Rule 60.02 provides:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation,

or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. . . .

■■■■■ The burden is on the party seeking extraordinary relief pursuant to Rule 60.02 to establish facts explaining why extraordinary relief is justified. *Brown v. Prudential Property and Cas. Ins. Co.,* 625 S.W.2d 719, 721 (Tenn.Ct. App.1981) (citing *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969); *Hulson v. Atchison T. & S.F. Ry.,* 289 F.2d 726 (7th Cir.1961); *Smith v. Kincaid,* 249 F.2d 243 (6th Cir.1957); *Federal Deposit Ins. Corp. v. Alker,* 234 F.2d 113 (3rd Cir.1956); and *Petition of Pui Lan Yee,* 20 F.R.D. 399 (N.D.Cal.1957)). If the appropriate facts are established, a trial court may relieve a party of obligations imposed in a final judgment. *See Gaines v. Gaines,* 599 S.W.2d 561, 564 (Tenn.Ct.App.1980). However, Rule 60.02(5), is not intended to "relieve a party from his or her free, calculated, and deliberate choices." *Holiday,* 42 S.W.3d at 94. Rather, relief pursuant to Rule 60.02(5) should be afforded in "the most extreme, unique, exceptional, or extraordinary cases . . . ." *Id.*

■■■■■ Father's inability to pay alimony due to a significant change in his employment in and of itself is wholly deficient to constitute a case of extreme or extraordinary circumstance. Moreover, a Rule 60.02(5) prayer for extraordinary relief must fail if the challenged obligation constituted a "free, calculated, and deliberate choice." The sole basis of Father's equitable claim is that he failed to anticipate that he may experience a significant adverse change in his earning capacity during the period of his alimony obligation. That reason is wholly inadequate to modify a final decree that is not modifiable except for extreme or extraordinary circumstances.

Although we affirm the denial of Father's petition to reduce the aggregate award of alimony *in solido* of $132,000, he may have sufficient grounds to support a modification of the schedule of payments. This is due in part to the prospect of repeated petitions for contempt in the event he does not have the ability to pay the monthly installments as scheduled. Thus, although Father may not reduce his obligation to pay an aggregate of $132,000 of alimony *in solido,* we remand for the trial court to consider reasonably modifying the exact amount due on a monthly basis.

## VI.  MOTHER'S EXPENSES AND ATTORNEY'S FEES ON APPEAL

■■■■ Mother seeks to recover her attorney's fees and expenses incurred on appeal to enforce the child support and alimony judgment. We have determined the parties should be responsible for their respective expenses, including attorney's fees and, therefore, respectfully deny Mother's request to recover her attorney's fees and expenses incurred on appeal.

## VII.  CONCLUSION

We reverse the decision of the trial court denying Father's petition to modify child support and remand with instructions to grant the petition as it pertains to child support and determine the amount of child support Father should pay pursuant to the Guidelines based upon his current income. The judgment of the trial court denying Father's petition to reduce alimony *in solido* is affirmed without prejudice to Father seeking to modify the schedule by which alimony payments are to be made. Costs

of appeal are assessed against the parties equally.