# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
MARCH 9, 2010 Session

## MARILEE ANN PETREY JONES v. JOHN TIMOTHY JONES

**Direct Appeal from the Circuit Court for Davidson County**
**No. 07D2373     Muriel Robinson, Judge**

---

**No. M2009-01512-COA-R3-CV - Filed May 20, 2010**

---

After the parties' divorce, Mother was named primary residential parent and Father was ordered to pay $3,250.00 per month child support. Father filed two petitions seeking a reduction of his support obligation, which were denied. The parties then agreed that Father would pay $2,500.00 per month support through March 1, 2014. Thereafter, Father filed a third petition to reduce support claiming decreased income and increased parenting time. Subsequently, the parties signed an agreement allowing substantially equal parenting time, which was filed with the trial court, but never signed by the trial judge. The trial court denied Father's third petition for modification, finding both that he had failed to prove a significant variance and that he was contractually bound to his $2,500.00 agreement. The trial court also awarded Mother's attorney his $15,000.00 fee. We affirm the trial court's award of attorney fees to Mother's attorney as well as its refusal to reduce Father's child support obligation due to his allegedly decreased income. However, we remand to the trial court for consideration of whether Father's child support obligation should be reduced due to increased parenting time, and for entry of the parties' Agreed Parenting Plan Order. We decline to award Mother her attorney fees incurred on appeal.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Andrew M. Cate, Nashville, Tennessee, for the appellant, John Timothy Jones

Michael W. Binkley, Franklin, Tennessee, for the appellee, Marilee Ann Petrey Jones

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Marilee Petrey Jones ("Mother") and John Timothy Jones ("Father") were divorced in February 1999 after an approximately ten-year marriage. Pursuant to a Marital Dissolution Agreement ("MDA") entered at the time of their divorce, Mother was named the primary residential parent of the parties' two minor children and Father was granted standard visitation and ordered to pay $3,250.00 per month child support in accordance with the Tennessee Child Support Guidelines (the "Guidelines").

In June 2000, Father filed a "Petition to Modify Custody, Child Support, and Alimony." Father claimed that at the time of the parties' divorce he was earning $72,000.00 per year in the "family [carwash] business," but that he was no longer employed by, or drawing a salary or profits from, such business. He also stated that he had taken a lesser-paying job with BellSouth–earning $5,200.00 per month–and therefore, that his child support should be reduced to $1,196.00 per month. Mother filed a counter-petition for criminal contempt, based on Father's alleged failure to pay child support and alimony. Father's petition was denied and Mother's counter-petition was granted. Father appealed.[1]

While his appeal was pending, Father filed a second petition to reduce child support in May 2001, based on his termination from BellSouth. Following a hearing, the petition was denied. However, acknowledging that "due to conflict with his father and their business activities, [Father] does not have access to [his substantial] assets or funds[,]" the trial court temporarily reduced Father's child support to $455.00 per month without forgiving the $2,795.00 per month difference.

In December 2001, Mother filed a second petition for contempt claiming that Father failed to pay child support as previously ordered by the trial court. In settlement of Mother's petition, the parties executed an "Agreed Order" requiring Father to pay Mother a lump sum of $65,000.00 for child support and alimony arrearages, as well as $2,500.00 per month child support through March 1, 2014. The Agreed Order was filed with the court in April 2002. Thereafter, Father sold ten percent of his ownership in the family business to his father ("Grandfather"), who agreed to pay the $2,500.00 per month to Mother.[2]

---

[1] A "Stipulation of Dismissal Pursuant to T.R.A.P. Rule 15" was entered on January 14, 2002.

[2] There is no indication that the agreement between Father and Grandfather was ever reduced to writing.

In August 2007, Father filed a third petition to modify child support, which is the subject of this appeal. Father claimed a significant variance in that he was currently earning approximately $50,000.00 per year, and that the parties were exercising substantially equal parenting time with the children.

The parties executed an agreed "Permanent Parenting Plan Order," filed in December 2008,[3] naming Mother as the primary residential parent, but allowing each party substantially equal parenting time. Regarding child support, the Permanent Parenting Plan Order provided:

> It is the intention of the parties that this agreed parenting plan shall serve and stand as the final order with regard to all outstanding issues, with the only exception reserved being modifying Father's child support obligation from the current $2,500.00 amount, to the amount called for under the Tennessee Child Support Guidelines.
>
> . . . .
>
> The parties have not been able to reach an agreement regarding child support. In the event that the parties are unable to agree, on or before September 11, 2008, on the amount of child support Father should be paying under the current guidelines, the Court will decide the amount of child support on September 11, 2008.
>
> The parties acknowledge that, once the proper amount of child support is set as indicated above, Court approval must be obtained before child support can be reduced or modified.

During the February 26, 2009 hearing on Father's third petition to modify child support, Mother made an oral motion for an involuntary dismissal based both on Father's failure to meet his burden of proof regarding a significant variance and on his pre-existing contractual agreement to pay $2,500.00 child support. In its order, the trial court granted the dismissal, finding that "[t]here has been no sufficient change in circumstances to warrant a reduction[,]" and furthermore, that "[t]he [Agreed] Order of April 17, 200[2], remains and is considered to be contractual in nature between the parties and enforceable as a contract for the specified time, therefore modification or change of circumstance has no bearing thereon." Despite Father's apparent request that the trial court do so, the trial court did not enter the parties' agreed Permanent Parenting Plan, stating that "[t]he child custody and visitation

___

[3]The Permanent Parenting Plan Order was filed with the trial court, but was not signed by the trial judge.

-3-

portions of the Final Decree may be entered in Parenting Plan form if the parties hereto agree, otherwise the divorce decree is the controlling Order as to parenting time." Finally, the trial court ordered Father to pay Mother's $15,000.00 attorney fee. Father appeals.

## II. ISSUES PRESENTED

Father has timely filed his notice of appeal and presents the following issues for review, summarized as follows:

1.      Whether the trial court erred in failing to enter the Agreed Parenting Plan Order;

2.      Whether the trial court erred in failing to reduce Father's child support obligation; and

3.      Whether the trial court erred in awarding a $15,000.00 judgment payable to Mother's attorney for his fees.

Additionally, Mother presents the following issue:

1.      Whether Mother should be awarded her attorney fees incurred on appeal.

For the following reasons, we affirm the trial court's award of attorney fees to Mother's attorney as well as its refusal to reduce Father's child support obligation due to his allegedly decreased income. However, we remand to the trial court for consideration of whether Father's child support obligation should be reduced due to increased parenting time, and for entry of the parties' Agreed Parenting Plan Order. We decline to award Mother her attorney fees incurred on appeal.

## III. STANDARD OF REVIEW

Our review of the trial court's involuntary dismissal of Father's petition is governed by Tennessee Rule of Appellate Procedure 13(d). *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007) (footnote omitted) (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991)). On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2009); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When the trial court makes no specific findings of fact, we

review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. *Entry of Permanent Parenting Plan Order*

On appeal, Father argues that the trial court erred in failing to enter the agreed Permanent Parenting Plan Order executed by the parties. We need not address whether this failure was error, as Mother has stated to this Court that she has no objection to its entry.[4] Therefore, we remand to the trial court for entry of the agreed Permanent Parenting Plan Order executed by the parties in 2008.

### B. *Child Support*

As we stated above, the trial court found that Father contractually bound himself to pay $2,500.00 per month in child support, and thus, that any alleged significant variance between that amount and the amount imposed under the Guidelines was irrelevant. However, Father contends that his agreement to pay $2,500.00 child support pursuant to the Agreed Order was modifiable and that he proved a significant variance justifying a reduction to $319.26 per month.

Parties are free to agree "to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines and to a method of calculating child support that differs from the mechanism contemplated by the Guidelines as long as the resulting child support meets or exceeds the amount mandated under the Guidelines." *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006) *superseded by statute on other grounds as*

---

[4]The trial court indicated that the parties failed to present evidence regarding their agreed Permanent Parenting Plan Order. There is no evidence that the trial court found entry of such would be contrary to the children's best interest. *See In re Emma E.*, No. M2008-02212-COA-R3-JV, 2010 WL 565630, at *7 (Tenn. Ct. App. Feb. 17, 2010) ("[C]ourts remain free to reject any parenting plan that is not in the best interests of the child.").

*stated in Moore v. Moore*, 254 S.W.3d 357, 360 n.5 (Tenn. 2007) (citing Tenn. Code Ann. § 36-5-101([j])). "'[S]ettlement agreements made during or in contemplation of litigation are enforceable as contracts.'" ***Allison v. Hagan***, 211 S.W.3d 255, 260 (Tenn. Ct. App. 2006) (quoting *Barnes v. Barnes*, 193 S.W.3d 495, 496-97 (Tenn. 2006)). However, "[a]n agreement between parties 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority 'loses its contractual nature' when merged into a divorce decree ." ***Id.*** (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)). "Because the provision merges into the decree, the child support obligation is subject to modification by the trial court." ***Id.*** (citing Tenn. Code Ann. 36-5-101(a); *Penland*, 521 S.W.2d at 224). If an obligor spouse agrees to provide more child support than is required under the Guidelines, the obligor "does not pay support that is 'outside' the Guidelines" such that it is not subject to modification. ***Id.*** at 643. "To the contrary, the additional amount of child support paid by the obligor continues to be 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support his children during minority." ***Id.*** (citing *Wade v. Wade*, 115 S.W.3d 917, 921 n.2 (Tenn. Ct. App. 2002)). Accordingly, "any agreement between the parents regarding the payment of child support of a *minor* child is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree." (emphasis added) ***Id.***

Although an agreement to pay child support in excess of the Guidelines *during minority* is modifiable, an agreement to continue support *beyond minority* retains its contractual nature, and thus, modification is governed by general contract principles. ***See id.*** at 642 (citations omitted). "Any subsequent modification by a trial court of an agreement that retains its contractual nature would violate the constitutional prohibition against the impairment of contractual obligations." ***Id.*** at 643 (citing *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975)). "The courts may not make a new contract for parties who have spoken for themselves and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise." ***Bryan v. Leach***, 85 S.W.3d 136, 152 (Tenn. Ct. App. 2001) (citing *Marshall v. Jackson & Jones Oils, Inc.,* 20 S.W.3d 678, 682 (Tenn. Ct. App.1999)).

Pursuant to the Agreed Order, Father agreed to pay $2,500.00 per month child support through March 1, 2014. Although the exact dates of majority[5] are unclear from the record, it is apparent that both children will have reached the age of majority by or before March 1,

---

[5]"[U]nder Tennessee law, a parent is obligated to provide support for children only until they turn eighteen years old or graduate from high school, whichever occurs later. ***Corder v. Corder***, 231 S.W.3d 346, 356 (Tenn. Ct. App. 2006) (citing *Kesser v. Kesser,* 201 S.W.3d 636, 642 (Tenn. 2006); *Hopkins v. Hopkins,* 152 S.W.3d 447, 449 (Tenn. 2004)).

2014.[6] Father's agreement to support his children beyond minority is a contractual obligation subject to modification through general contract principles.

At oral argument before this Court, Father attempted to argue that the parties' Permanent Parenting Plan Order, which stated that the trial court would set child support if the parties were unable to agree upon such, constituted a written modification of the Agreed Order's $2,500.00 payment obligation. We find no evidence that Father raised this issue in the trial court, nor do we find evidence of any consideration to support a modification of this contractual agreement. Therefore, we find that Father is contractually obligated to pay $2,500.00 per month child support from the time both children reach the age of majority through March 1, 2014.

Although Father's agreement to support his children beyond their minority is subject to the general rules of contract interpretation, his agreement to support them during their minority is subject to modification by the trial court.[7] *See id.* "The modification of child support is governed by Tennessee Code Annotated section 36-5-101(g)." *Wine v. Wine,* 245 S.W.3d 389, 393 (Tenn. Ct. App. 2007). The initial inquiry is "whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *Id.* at 394; *see* Tenn. Code Ann. § 36-5-101(g)(1). Tennessee Code Annotated section 36-5-101(g)(1) provides that the trial court shall increase or decrease child support upon finding a significant variance "unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed."[8] Father,

---

[6]The parties' children were born on January 24, 1991 and December 9, 1994.

[7]The $2,500.00 payment from Grandfather was an account receivable by Father pursuant to a sale by Father to Grandfather of a percentage of the family business. Father simply arranged for Grandfather to make the payment directly to Mother in discharge of Father's obligation. The payment was actually income to Father which he utilized to meet his child support obligation. The parties do not argue that Father's "agreement" with Grandfather regarding the $2,500.00 monthly payment during the children's minority affects Father's ability to seek a modification.

[8]The Guidelines similarly provide:

Upon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed. If the circumstances that resulted in the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified.

(continued...)

as the party seeking the modification, bears the burden of proving the existence of a significant variance. *Wine*, 245 S.W.3d at 394.

At the hearing on Father's modification petition, Father described his employment history. He claimed that in 2002, when he agreed to pay $2,500.00 monthly support, he was earning approximately $140,000.00 per year in the family carwash business, of which he owned a twenty-eight percent interest. However, he claimed that Grandfather "stopped his salary" in July of 2006, and then terminated him in December 2006. After suing Grandfather, Father mediated a deal to retain sole ownership of four carwashes valued at $4,084,000.00 After refinancing the debt on the carwashes and obtaining a loan to make improvements to such, Father owed an approximately $2,855,000.00 debt on the properties. In his 2007 petition to modify, Father claimed that he was currently earning $50,000 per year, and at the hearing, he testified that in 2008 he drew approximately $75,000.00 from the business, and that he was "scraping and scratching to make ends meet." However, his financial statements introduced at the hearing presented a different picture. According to his sworn financial statements, Father's net worth in 2007 was $2,552,000.00,[9] including $144,000.00 in cash and $49,000.00 in vehicles, while his annual expenses were only $65,680.00. In 2008, his net worth increased to $2,664,460.00,[10] including $127,000.00 in cash and $100,000.00 in personal effects. He listed an income of $140,000.00 and living expenses of $71,680.00.

In its Order, the trial court recited the "evidence" as follows:

As of the date of trial, Mr. Jones alleges he has experienced a change in his ability to pay this $2,500.00 per month child support required by the April 17, 2002 Order. The proof presented by Mr. Jones' own testimony is that he is the owner of four car washes in the Nashville area as a result of a mediated settlement with his Father over ownership of a family business. Mr. Jones and his present wife run businesses and he totally controls his salary, her salary and the gross receipts of his company. Mr. Jones has adequate borrowing power and he successfully borrowed money from banks to renovate and expand his

---

[8](...continued)

Tenn. Comp. R. & Regs. § 1240-02-04-.05(5).

[9]Father listed assets of $4,845,000.00 and liabilities of $2,293,000.00.

[10]Father listed assets of $5,074,000.00 and liabilities of $2,409,540.00.

businesses. Mr. Jones has established credit lines with his banks and has acquired personal assets and real estate. He totally manages his cash flow and can readily pay all expenses he desires to do so.

. . . .

His testimony reflected he and his present wife own a home valued at $350,000.00 with equity of $72,460.00. His annual salary for financial purposes was listed as $140,000.00. Further, he retained $127,000.00 in cash as per his most recent financial statement.

Mr. Jones further testified that he controls the cash flow of his business and has used business cash when he needed to pay for tuition for the children as well as other expenses. He has used a note receivable to him of approximate[ly] $30,000.00 per year to pay his child support of $2,500.00 per month as reflected by the Order of April 17, 2002.

The fact that some tax returns reflect a loss of his small closely held business is not surprising and is typical when the owner controls the gross receipts and has ability to borrow, repay loans and pay personal expenses out of the business accounts.

As we stated above, Father bears the burden of proving a significant variance warranting a child support modification. *Wine*, 245 S.W.3d at 394. In his modification petition, Father made an unsupported claim that he earned an income of only $50,000.00 in 2007, and at the hearing on such petition, he requested that his support be reduced to $319.26 per month. However, the testimony presented reveals that he and his current wife possess complete control over their primarily-cash business, including the amount of income withdrawn, and that although he chooses to withdraw only "the minimum [he] need[s] to get by[,]" he is able to "just write a check" for "other expenses that might pop up[.]" Moreover, Father's personal financial statements demonstrate that he owns significant assets that can be used to secure his obligation to pay child support. Father submits that his agreement to pay $2,500.00 monthly child support was in accordance with the Guidelines pursuant to his $140,000 income in 2002. Although Father allegedly withdrew less than $140,000.00 in 2007, Father has failed to show that he lacked the ability to withdraw that amount or that he lacked assets valued at such. Therefore, we find that the evidence does not preponderate against the trial court's finding that Father failed to carry his burden of proving a significant variance such that he is due a modification of child support. *See Devault v. Devault*, No. 01-A-01-9806-CV00270, 1999 WL 377692, at *6 (Tenn. Ct. App. June 11, 1999) (including

rental property and home equity in support calculation); ***Redmond v. Grunow***, 898 S.W.2d 229, 231 (Tenn. Ct. App. 1995) (stating that execution could be made on obligor's "wages or other assets").

Having found that Father has failed to show that his allegedly decreased income warrants a modification of his child support obligation, we now address Father's argument that his increased parenting time warrants a modification. Pursuant to the parties' MDA, Father was granted the standard visitation presumed by the Guidelines[11]–every other weekend, alternating holidays, and two weeks during the summer. However, under the Permanent Parenting Plan Order executed in September and November 2008, by Mother and Father, respectively, the parties agreed to substantially equal parenting time: Mother 183 days, and Father 182 days. The Guidelines provide for a reduced child support obligation when the alternate residential parent exercises additional parenting time:

> If the ARP spends ninety-two (92) or more days per calendar year with a child, or an average of ninety-two (92) days with all applicable children, an assumption is made that the ARP is making greater expenditures on the child during his/her parenting time for transferred costs such as food and/or is making greater expenditures for child-rearing expenses for items that are duplicated between the two (2) households (e.g., housing or clothing). A reduction to the ARP's child support obligation may be made to account for these transferred and duplicated expenses, as set forth in this chapter. The amount of the additional expenses is determined by using a mathematical formula that changes according to the number of days the ARP spends with the child and the amount of the BCSO [Basic Child Support Obligation]. . . . .
>
> . . . .
>
> The presumption that more parenting time by the ARP results in greater expenditures which should result in a reduction to the ARP's support obligation may be rebutted by evidence.

**Tenn. Comp. R. & Regs. § 1240-02-04-.04(7)(h)**. Based on the parties' substantially equal parenting time, we find that Father may be entitled to a reduction in child support during each

---

[11]"These Guidelines presume that, in Tennessee, when parents live separately, the children will typically reside primarily with one parent, the PRP, and stay with the other parent, the ARP, a minimum of every other weekend from Friday to Sunday, two (2) weeks in the summer, and two (2) weeks during the holidays throughout the year, for a total of eighty (80) days per year. The Guidelines also recognize that some families may have different parenting situations and, thus, allow for an adjustment in the child support obligation, as appropriate, in compliance with the criteria specified below." Tenn. Comp. R. & Regs. § 1240-02-04-.04(7)(a).

child's minority, and we remand to the trial court for consideration of this issue.

### B. Attorney Fees

Next, we address Father's contention that the trial court erred in awarding attorney fees to Mother's attorney. Father argues that his claims regarding entry of the Permanent Parenting Plan Order and for reducing his child support obligation should have succeeded in the trial court, and thus, that Mother should not have received an award of attorney fees as the prevailing party. Additionally, he claims that "there is no law which provides for a judgment to be awarded to the attorney for a party."

Tennessee Code Annotated section 36-5-103(c) vests trial courts with the power to award reasonable attorney fees in child support modification cases. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). "The award of attorneys' fees is within the trial court's discretion." *Id.* (citing *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)). Therefore, unless it "'affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining,'" we will not reverse the trial court's decision on appeal. *Id.* (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999)). We find that the fee amount awarded by the trial court was not an abuse of its discretion, and Father fails to explain how awarding such fee directly to Mother's attorney caused him injury. The award is affirmed.

### V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's award of attorney fees to Mother's attorney as well as its refusal to reduce Father's child support obligation due to his allegedly decreased income. However, we remand to the trial court for consideration of whether Father's child support obligation should be reduced due to increased parenting time, and for entry of the parties' Agreed Parenting Plan Order. We decline to award Mother her attorney fees incurred on appeal. Costs of this appeal are taxed to equally to Appellant, John Timothy Jones, and his surety, and to Appellee, Marilee Petrey Jones, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.