IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 15, 2013 Session

## LESTER G. MURPHY, SR. v. STATE OF TENNESSEE CHILD SUPPORT SERVICES

### Appeal from the Juvenile Court for Humphreys County
No. J851107      Anthony L. Sanders, Judge

### No. M2012-02514-COA-R3-JV - Filed April 29, 2014

A mother and father divorced and the trial court ordered the father to pay the mother $50 a week as support for their two children. The children subsequently came into the legal custody of their maternal grandfather, but the court did not order support. Ten years later, the Tennessee Department of Children's Services filed a petition to set child support against the father. After a hearing which the father did not attend, the trial court increased his child support obligation to $333 a month and declared that he owed back support of $31,635, which he was ordered to pay in monthly installments. Four years later, the father, acting *pro se*, filed a petition to modify the support order. The trial court dismissed the father's petition, declaring only that its previous order was a valid one. Because there was an existing support order for the two children, the appropriate proceeding would have been one to modify that order. The requirements for modification were not met, and the trial court exceeded its authority by assessing an arrearage based upon an amount different from the amount set in the existing order. We accordingly hold that the father was entitled to Relief from a Final Order under Tenn. R. App. P. 60.02(5), and reverse the trial court's denial of that relief. We also vacate the trial court's earlier order imposing on the father a duty to pay a modified amount of support and retroactive child support.

### Tenn. R. App. P. 3 Appeal As of Right; Judgment of the Juvenile Court Reversed

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Lester G. Murphy, Sr., Nashville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, Warren A. Jasper, Senior Counsel; R. Stephen Powers, Assistant District Attorney, Ashland City, Tennessee, for the appellee, Tennessee Department of Human Services, Child Support Division.

## MEMORANDUM OPINION[1]

### I. DIVORCE, CUSTODY AND CHILD SUPPORT

Lester G. Murphy Sr. (Father) and Ellen Baker (Mother) married in 1990. They subsequently became the parents of two boys, born in 1991 and 1992. Their marriage ended on August 20, 1993, with a divorce decree from the Chancery Court of Humphreys County. The divorce decree gave Mother "the absolute care, custody and control of the minor children of the parties." Father was granted visitation and was ordered to pay $50 a week in child support.

There is almost no evidence in the record about the activities of the parents and the children in the years following the divorce.[2] In September of 1996, the younger child came under the care of Mother's father Larry Baker ("Mr. Baker") and Mr. Baker's wife. Father moved to California at some point, and subsequently had very limited contact with the children. He asserted at oral argument that he sometimes spoke to them by telephone, and that he consistently paid his court-ordered child support, but he acknowledged that he did miss some payments.

On May 8, 1997, Mr. Baker filed an emergency petition in the Humphreys County Juvenile Court "for temporary custody of a child." The following day, the court entered an order granting him temporary custody of both children. After a subsequent hearing, the court ordered that custody of the two children remain with Mr. Baker, and it reserved the question of child support. Father stated at oral argument that he was not notified of any of these proceedings and that he was not named as a party or even mentioned at all in any of the orders filed in 1997 and 1998. He stated at oral argument that he was not even aware at the time about the transfer of custody to Mr. Baker. The Department does not dispute the lack

---

[1]Rule 10 (Court of Appeals). Memorandum Opinion.-(b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2]Father has copied six documents into the appendix of his brief on appeal related to subsequent proceedings involving the custody of the children. However, these documents are not part of the appellate record. *See* Tenn. R. App. P. 24-26.

of notice to Father of the change of custody.

## II. FURTHER CHILD SUPPORT PROCEEDINGS

In 2007, Father returned to Tennessee to live. In that same year, a petition to set support was filed in the Juvenile Court of Humphreys County by State of Tennessee, Department of Human Service, ex rel. Larry Baker.[3] A hearing on the petition was conducted on February 5, 2008, at which Father was apparently not present. The court's order, entered on March 5, 2008, announced that its decision was based on "statements of Counsel for the State and the entire record in this matter," and recited that "the petition to set support was served upon the Respondent on December 20, 2007."[4]

The order also stated that Father had a duty to pay child support for his children, and it set Father's current support obligation at $333 a month until the children emancipate or until further orders of the court. The court also found that Father owed "back support" in the amount of $31,635, and ordered him to pay that amount off at the rate of $67 per month. There is no indication in the order as to how the court arrived at those figures.

On July 12, 2012, Father filed a *pro se* Petition to Modify Child Support or Arrearages Due to Mistake or Fraud. He asserted that the 2008 support order was fatally defective because it did not follow the procedures that are required to modify a child support order and, therefore, that the 1993 child support order remained the only valid one. The trial court conducted a hearing on Father's petition, and on October 17, 2012, entered an order declaring that the 2008 child support order was valid and dismissing the petition. This appeal followed.

---

[3]The State's Petition to Set Support is not found in the record. However, Tennessee Code Annotated § 71-3-124(c)(2) provides that, when an individual receives assistance under Title IV-D, the State may file any legal action to "establish, modify or enforce child or spousal support," and that the State becomes the assignee of any right of support to which that individual is entitled. We therefore presume that Mr. Baker received assistance from the State for the benefit of his grandchildren.

[4]An alias summons for the 2007 proceeding with a signed return of service was entered into the record as an exhibit to the State's response to Father's subsequently filed Petition to Amend. Father stated in his brief that he never saw the summons and that he was unaware of the impending hearing. He explained that he believes the summons was mistakenly served on his elderly and infirm house guest while he was at work, and that he was never told about it.

### III. THE ORDER ON APPEAL

The subject of this appeal is the order entered October 17, 2012, denying Father's petition to modify the trial court's 2008 child support order. Because that petition was filed over four years after the 2008 order became final, the only available avenue for review of that order is through a Motion for Relief under Tenn. R. Civ. P. 60.02. That rule reads in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken

Rule 60.02 "was designed to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976). As our Supreme Court has stated, "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules. Because of the importance of this "principle of finality," the "escape valve" should not be easily opened. *Banks v. Dement Const. Co., Inc.*, 817 S.W.2d 16, 18 (Tenn. 1991) (quoting *Toney v. Mueller Co.*, 810 S.W.2d at 145, 146 (Tenn. 1991)).

Father's petition alleged mistake or fraud, but did not mention Rule 60.02; neither did the trial court's order. Nonetheless, the substance of the petition makes it clear that relief from the earlier judgment was the remedy sought. In order for the trial court to have ruled on the petition and for this court to consider it, it must be treated as a motion for relief from a final judgment under Tenn. R. Civ. P. 60.02. Since the petition substantively requests Rule 60 relief, even though not by technical language, we deem the petition a Tenn. R. Civ. P. 60.02 motion.[5]

---

[5]Parties who decide to represent themselves are entitled to fair and equal treatment by the courts, and the courts should take into account that many *pro se* litigants have no legal training and little familiarity with
(continued...)

Father's petition challenges the validity of the Juvenile Court's 2008 final order, which had two components: (1) setting prospective support to be paid to the Grandfather of $333 per month and (2) an award of $31,635 in "back child support." His arguments are essentially that the judgment is void or unenforceable and that the defects in the trial court's actions justify relief from the 2008 judgment.

## IV. THE ORDER OF MARCH 5, 2008

The nature of the proceeding that resulted in the order of March 5, 2008, is in question, and resolution of that issue determines the outcome of the other issues raised by the parties. The essential question is whether the petition filed by the Department of Human Services initiated a new case asking that initial child support be set or whether the petition was actually an invalid attempt to modify the existing support order.

### A. A New Action or Modification of Existing Support Order

According to the order of March 5, 2008, the 2008 proceeding was initiated by the Department filing a "Petition to Set Support."[6] It was filed in the Juvenile Court of Humphreys County and given a docket number in that court. The 2008 order does not mention the existence of a prior child support order. Neither does it refer to the change in custody that had occurred ten years earlier.

The Department's position is that it initiated a new action. It acknowledges the existence of the 1993 Chancery Court divorce decree that established Father's child support obligation, but argues that the 2008 order from the Juvenile Court was not a modification of the 1993 Chancery Court order. We must conclude that the petition filed by the Department in 2008 was, as it indicated, a request to establish an initial support award to be paid to the Grandfather. The petition did not initiate a proceeding to modify an existing

[5](...continued)
the judicial system. *Hessmer v. Hessmer*, 138 S.W.3d 901 (Tenn. Ct. App. 2003); *Whitaker v. Whirlpool Corp*., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). The courts accordingly give *pro se* litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp*., 32 S.W.3d at 227; *Paehler v. Union Planters Nat'l Bank, Inc*., 971 S.W.2d at 397; *Irvin v. City of Clarksville,* 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). But the courts must also be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts are cautioned against excusing *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).

[6]The Petition is not included in the record, so we rely on the trial court's recitation of its title.

support obligation.

The Department also argues that a modification action was not required because the parties are not the same. The 1993 order required Father to make payments to Mother, whereas the 2008 petition was filed on behalf of Grandfather, who by then had custody of the children.

Father responds that the change of custody does not justify a new proceeding to set initial support. Father argues that because the prior support order had never been vacated or superceded, the State should have filed a petition to modify support rather than a new action in the Juvenile Court to set support, as if the matter were being tried for the first time.

We agree. A change of custody can trigger a modification to a new payee, but not a new obligation. Child support orders are to provide for the children named in the order. The obligor becomes legally responsible to provide the amount awarded to the named party for the support of those children. In the case before us, not only do the 1993 order and the 2008 order involve support for the same children, but the obligation falls on the same payor.

We find no basis for the simultaneous existence of two different child support orders for the benefit of the same children, to be paid by one parent, to two different recipients As long as the original child support order was in effect, initiation of a new action to set initial support is simply unauthorized.

Accordingly, the 2008 order and the procedure resulting in that order must be reviewed as an order modifying the 1993 child support order.

## B. Requirements for Modification of a Support Order

Child support, including any modification of support, is governed by statute. Tennessee Code Annotated § 36–5–101(g) governs modification. *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006); *Wine v. Wine*, 245 S.W.3d 389, 393 (Tenn. Ct. App. 2007). In an action to modify an existing support order, the initial inquiry is "whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *Wine v. Wine*, 245 S.W.3d at 394.

> Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the

circumstances that caused the deviation have not changed.

Tenn. Code Ann. § 36–5–101(g)(1).[7]  The Guidelines describe a significant variance as:

> at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order or, if the tribunal determines that the Adjusted Gross Income of the parent seeking modification qualified that parent as a low-income provider, at least a seven and one-half percent (7.5% or 0.075) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order.

Tenn. Comp. R. & Regs. 1240–2–4–.05(2)(c).

The trial court's 2008 order does not address any of the required factors for modification.  There was no determination that a significant variation existed, and, in fact, no mention of the prior support order and no comparison as required by the Guidelines. The order demonstrates on its face that the trial court did not follow, and we presume the Department did not assert, the requirements necessary for a modification of an existing support order.

### C.  Retroactive Modification of Child Support

There is absolutely no information in the 2008 order as to the basis upon which the trial court calculated that Father was obligated to pay Mr. Baker "back support" of $33,165. Both Father and the Department indicate that they believe the court intended to make Father liable for unpaid support from 1998, when Mr. Baker obtained legal custody of the children, but calculated at the newly-imposed amount of support, *i.e.*, $333 per month.  The magnitude

---

[7]The child support guidelines similarly provide:

> Upon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified. Tenn. Comp. R. & Regs. 1240–2–4–.05(5).

of the obligation also suggests that this is the basis for the amount.

However, Father's child support obligation had been initially set at $50 per week, and that amount had never been changed. When the Juvenile Court transferred custody of the children to Mr. Baker in 1998, no order was entered changing either the amount or payee of the existing support award. The trial court reserved the question of child support, and no further action was taken until 2008. Father was not a party to the 1998 proceedings, and the State does not even suggest that notice of those proceedings was mailed to him. Thus, his support obligation could not have been changed in his absence.

Under the circumstances, the imposition of "back support" calculated on an amount different from that established in an existing order violates the statutory prohibition against retroactive modification of an existing child support order.

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. **Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action been mailed to the last known address of the opposing parties.**

Tenn. Code Ann. § 36-5-101 (f)(1) (emphasis added).

After the enactment of the statute, our courts have consistently held that retroactive modifications of child support awards are barred, even in the face of traditional equitable principles that would have allowed such modifications under earlier law. *Rutledge v. Barrett,* 802 S.W.2d 604, 606 (Tenn. 1991); *State ex rel. Whitley v. Lewis*, 244 S.W.23d 824, 829–30 (Tenn. Ct. App. 2007); *Alexander v. Alexander,* 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000) (noting that "a court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee [parent] files his or her petition").

Additionally, the 1993 support order required Father to pay support to Mother. No order requiring him to pay support to Grandfather was ever entered. In order to determine whether Father had an arrearage of unpaid support, evidence regarding his payments to Mother would have necessary. It appears from the order that no such evidence was considered.

**D. Prospective Child Support**

We have already determined that the trial court had no authority to set an initial support obligation in its 2008 order. Consequently, we need not examine the award in any detail. However, we will point out that the order indicates significant deficiencies: the absence of any reference to the Tennessee Child Support Guidelines and the absence of the required worksheets.

"In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn.Code Ann. § 36–5–101(e)(1)(A). The Guidelines must "[b]e applied by all judicial or administrative tribunals and other officials of the state who have power to determine child support awards in the state . . ." Tenn. Comp. R. & Regs. 1240-2-4-.01(d)(1).

The Guidelines mandate the use of Worksheets promulgated by the Department and the maintenance of the completed Worksheets "as exhibits in the tribunal's files or as attachments to the order." Tenn. Comp. R. & Regs. 1240–02–04–.04.

The proper application of the guidelines results in a rebuttable presumption of the correct amount of child support to be ordered. Tenn. Code Ann. § 36-5-101(e)(1)(A). An obligor's income is a basic component for the calculation of a presumptively correct child support obligation. Father did not appear at the hearing where the court decided on the amount of support he had to pay, and the order makes no reference to any evidence as to his income.[8] Neither is there any explanation of the source of the amount of support, such as imputing income.

## V.

The trial court's order denying Father relief from the 2008 judgment is reversed. The March 2008 judgment purporting to set a new support obligation prospectively and to award

---

[8]Even if the court made its decision on the basis of income that it imputed to Father, it still lacked sufficient information to reach a rebuttable presumption of the amount of child support to be awarded under the income shares model. Calculations under that model also require information about the income of the other parent, who is normally expected to be the recipient of the support.

"back child support" is vacated. We remand this case to the Juvenile Court of Humphreys County for any further proceedings necessary. Tax the costs on appeal to the appellee, the Tennessee Department of Human Services.

_____
PATRICIA J. COTTRELL, JUDGE