IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2010 Session

## DAN KENNETH KELLY v. SONYA FRANCES KELLY

**Appeal from the Circuit Court for Robertson County**
**No. 11075      Ross H. Hicks, Judge**

---

**No. M2010-00332-COA-R3-CV - Filed January 20, 2010**

---

In this post-divorce dispute, the trial court denied the petitions of both parents to modify the parenting time but granted the mother's petition to modify child support. We affirm the trial court's decision with respect to parenting time but reverse and remand for a proper determination regarding modification of child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jack Robinson Dodson, III, Nashville, Tennessee, for the appellant, Dan Kenneth Kelly.

David Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the appellee, Sonya Frances Kelly.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Sonya Kelly ("Mother") and Dan Kelly ("Father") were divorced in December 2005. They have one minor child, a daughter, Madeline, born in March 1999. The parenting plan incorporated in the final divorce decree named Mother the primary residential parent, with Father having regular parenting time every other weekend and every Wednesday from 6:00 p.m. to 8:00 p.m. At the time of the divorce, Father's job in the music industry required him to travel, and the parenting plan provided that when Father was out of town on a weekend when he was to have parenting time, he would be allowed to make up this visitation time. The parenting plan also includes the following provision: "The parties anticipate that Father

will have additional and liberal parenting time in addition to the above as the parties agree." Father was ordered to pay child support in the amount of $942.00 a month.

In September 2006, the court entered an agreed order stating that Father had lost his job in March 2006 and reducing Father's child support to $550.00 per month until he became employed full-time.

Father filed a petition to modify the parenting plan and child support in March 2009. He alleged that he was "no longer a part of this band [in which he played at the time of the divorce] and his touring schedule has greatly decreased" and that, as a result, he had been exercising more parenting time with the minor child. Father asserted that the change in his employment schedule constituted a material change in circumstances sufficient to warrant modification of the parenting plan to reflect the amount of time he had actually been spending with the child. He also requested a corresponding reduction in child support.

Mother opposed Father's petition and filed her own petition to modify the parenting plan. She alleged that she had, "on almost each occasion [when Father requested additional parenting time], attempted to accommodate Father in his request until the constant back and forth began to have an adverse emotional effect" on the minor child. Mother asserted that there had been a material change of circumstances since the time of the divorce. She stated that, instead of informing Mother when he would be out of town on one of his scheduled weekends with the child so that an alternate weekend for parenting time could be arranged as contemplated by the parenting plan, Father would leave the child with his new wife and her children. Mother also requested an increase in Father's child support obligation based upon the existence of a significant variance.

The matter was heard on December 2, 2009. The testimony and evidence presented at trial will be summarized below as relevant to the issues on appeal. The court denied both parents' petitions to modify the parenting time, finding no material change of circumstances. The court granted Mother's petition with respect to child support, finding a significant variance, and increased Father's child support obligation to $850.00 per month.

On appeal, Father argues (1) that the trial court erroneously modified the parenting plan by reducing Father's visitation without a showing of a material change of circumstances; (2) that the trial court erred in modifying Father's child support obligation without a showing of a significant variance; and (3) that the trial court erred in its calculation of child support by factoring in Mother's child care expenses although Mother had no reportable income from employment and there was insufficient evidence of her child care expenses.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). Determinations regarding custody "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

Setting child support is a discretionary matter. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Courts are required to use child support guidelines developed by the Tennessee Department of Human Services "to promote both efficient child support proceedings and dependable, consistent child support awards." *Id.* at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. § 1240-2-4-.01(3)(b), (c). Even with the adoption of the 2005 child support guidelines based upon the income shares model, trial courts retain a certain amount of discretion in their decisions regarding child support, which decisions we review under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

A trial court abuses its discretion only when it applies an incorrect legal standard or when it reaches a decision against logic or reasoning that causes an injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under this standard, we are required to uphold the ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). We must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *Huffman v. Huffman*, No. M2008-02845-COA-R3-CV, 2009 WL 4113705, at *8 (Tenn. Ct. App. Nov. 24, 2009) (quoting *Kaatrude*, 21 S.W.3d at 248).

ANALYSIS

I.

Parenting time

Father's argument with respect to the modification of parenting time is that the trial court erred because although the court found no material change of circumstance, the court actually did reduce Father's parenting time.

It is well-established that, in order to modify a parenting plan with respect to parenting time (not to change custody), the trial court must first determine whether a material change of circumstance has occurred since the previous parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(C); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007). Tenn. Code Ann. § 36-6-101(a)(2)(C) is the relevant statutory provision as to what constitutes a material change of circumstance in the context of changing the parenting schedule:

> A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Only if the court finds a material change of circumstance does it proceed to the second step, whether modification of the current residential schedule is in the child's best interest. *Kendrick*, 90 S.W.3d at 575.

In this case, the trial court denied both petitions to modify the parenting time; in its ruling from the bench, the court stated that it was not satisfied that there had been a material change of circumstance. The court repeatedly stated at the hearing that it was not modifying the parenting schedule. The court did, however, comment on the difficulties described by the parties and admonish them to make every effort to work together in accordance with the terms of the parenting plan. The court's order includes the following statements:

> The Court has admonished both parties to continue to operate under the previous parenting plan. The Court has further required that Father

-4-

communicate with Mother and give her notice as relates to his travel schedule so that the parties, if necessary, can modify Father's parenting time as stated in the original parenting plan. If he is out of town, the parties shall cooperate to allow Father to make up visitation time. The Court has admonished the parties to conduct themselves as adults and to work like adults and figure out how to make the parenting plan work. The Court further finds that the simplest way for the parenting plan to work out is for Mr. Kelly to furnish a schedule and to advise Mother in some fashion when he is going to be travelling for his business. However, it is not the Court's intention to [tell] the parties how to accomplish this and that both are adults and should be able to figure the same out. The Court has admonished both parties that they are adults and they can certainly figure out how to treat one another appropriately when it relates to Father's visitation with the parties' minor child. . . . The Court finds that this is not rocket science. The Court has admonished the parties in the event that it is necessary that the Court has to do this, the Court will appoint a parenting coordinator which will only increase the costs for the parties, whereas if they work together they can do the same at no cost.

The Court agrees with Mother that the minor child, Madeline, needs to be at one place during the week during the school year. Father's other "liberal visitation by agreement of the parties" can occur at different times of the year.

Father takes the position that the court restricted the time frame available for his additional visitation, thereby effectively reducing his parenting time.

We cannot accept Father's argument on this point. The trial court made it clear that it was not modifying the parenting schedule. The parenting plan states that Father can have "additional and liberal parenting time . . . as the parties agree." The fact that Mother no longer agreed that this additional parenting time would happen during the school week and that the trial court expressed agreement with her position does not constitute a change in the plan and does not reduce Father's parenting time as set out in the plan. The court's comments regarding how the parents could cooperate to make the current parenting plan work must be interpreted as advisory. This interpretation is consistent with the following statements included in the court's comments from the bench:

So, you know, whatever you all do with the advice or pontification, if you will, that I've just given you, you do what you want with it. But I'm suggesting to you your lives will be a lot easier to live if you approach this with common sense and good will as opposed to making it adversarial. It would also be a lot less expensive for you.

Thus, while declining to modify the parenting schedule, the court set out some guidelines it felt would help the parties work under the existing parenting plan. These guidelines were intended as suggestions to help the parties avoid having to come back to court to have the court resolve their disagreements over the parenting schedule.

Thus, in accordance with the trial court's decision, the parties' original parenting plan remains in effect, and the parties are required to comply with it. If either parent believes the other parent is not in compliance with that order, he or she has the right to file a contempt petition.

II.

Child support

The remaining issues relate to the trial court's order increasing Father's child support obligation.

In considering a petition to modify child support, the trial court must determine whether there is a significant variance between the obligor's current obligation and that set by the current guidelines. *See* Tenn. Code Ann. § 36-5-101(g); *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006). The parent seeking to modify a child support obligation has the burden of proving that a significant variance exists. *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007). Where a significant variance exists, the court "shall decree an increase or decrease of support" upon application by either party, "unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed." Tenn. Code Ann. § 36-5-101(g)(1). Tenn. Code Ann. § 36-5-101(e)(1)(A) instructs the trial court to apply the child support guidelines as a rebuttable presumption in determining the amount of child support. *See* Tenn. Comp. R. & Reg. § 1240-2-4-.01(1)(d)(1).

Although trial courts have discretion to deviate from the child support guidelines, they must support such a deviation with specific written findings. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. § 1240-2-4-.07(1)(b); *Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *7 (Tenn. Ct. App. Nov. 6, 2008). If, in its discretion, a trial court decides to deviate from the amount of support required by the guidelines, it must state in its order the basis for the deviation, the amount the child support order would have been without the deviation, and why application of the child support guidelines would be unjust or inappropriate. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. § 1240-2-4-.07(1)(b); *Atkins*, 2008 WL 4831314, at *7.

Under the child support guidelines, a significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. § 1240-2-4-.05(2)(c). Thus, in order to determine whether a significant variance exists, a court must calculate the presumptive child support amount under the current child support guidelines and compare it to the existing child support obligation.

In this case, Father asserts that the trial court erred in making its calculation of the amount of child support due under the current guidelines in two main respects: calculating Mother's income and taking into account her child care expenses.[1]

With respect to Mother's income, the court adopted the figure used in Mother's worksheets, which is $1,256.67 in gross monthly income. According to the trial court's ruling, this figure reflects imputed income at the minimum wage level. Tax returns and testimony indicate that Mother, who worked fulltime as a songwriter, had annual earnings of only $525 and $3,270 for the previous two years. She testified that she had a high school education. When asked about her anticipated earnings for 2009, Mother gave the following testimony:

> I currently have a song in the top ten charts. I have three country cuts coming out [an] album next year. There's no way to know what those royalties will be. Those royalties will be delayed anywhere from nine months to two years.

There is no other evidence in the record regarding Mother's earning potential.

The child support guidelines address circumstances under which a court is to impute income to a parent. One such circumstance occurs when a parent "fails to produce reliable evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support); and . . . [t]he tribunal has no reliable evidence of that parent's income or income potential." Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(iv)(II)(I)-(II). When these criteria are met, the court is to impute annual gross income of $29,300 for female parents.[2] Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(iv)(II)(IV).

---

[1]The trial court expressly adopted the figures used in the child support worksheet submitted by Mother. Since Mother's worksheet is included in a supplemental record, we reject Father's argument that the record does not contain the required worksheets.

[2]The provisions of Tenn. Comp. R. & Regs. § 1240-2-4-.04(3)(a)(2)(iv)(II)(III) would not apply here because the child support order to be modified did not include any income for Mother.

In this case, the record does not include reliable evidence of Mother's earning potential. Her tax returns show that she had minimal earnings in the previous two years despite working fulltime as a songwriter, but she admits that these tax returns do not reflect her earning ability. There is nothing in the record to support Mother's request to impute income at the minimum wage level. We conclude that the evidence preponderates against the trial court's use of minimum wage and that the case should be remanded for a determination of Mother's future earning potential. *See Kaplan v. Bugalla*, No. M2006-02413-COA-R3-CV, 2007 WL 4117787, at *6 (Tenn. Ct. App. Nov. 16, 2007). In the absence of reliable evidence, the court should impute annual income of $29,300 according to the child support guidelines.

The child support guidelines allow an average monthly amount to be entered into the child support calculations for "[c]hildcare expenses necessary for either parent's employment, education, or vocational training that are determined by the tribunal to be appropriate, and that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together." Tenn. Comp. R. & Regs. § 1240-2-4-.04(8)(c)(1). Mother requested that she receive credit for $650 a month in work-related child care expenses. To support this request, Mother submitted copies of 13 cancelled checks for $150 and one cancelled check for $50, reflecting weekly payments from late August 2009 through late November 2009. Mother testified that she worked at an office in Nashville several days a week and worked at home the rest of the time. These checks represented payments to a babysitter to take care of the minor child, who was ten years old, after school an average of three days a week.

Mother's child support worksheet, with her income based upon minimum wage and child care expenses of $650 per month, shows a presumptive child support amount of $1024 per month. The trial court awarded Mother $850.00 a month in child support and, in its order, based the $174.00 downward deviation on "the change in the amount of current support and the amount as set in the Order of September 25, 2006 [$550 per month] and because of the costs of daycare." As to the latter factor, the court raised a question from the bench as to "whether or not it's really worth while to be spending that much on day care in relationship to the income you produce."

On remand, the court must determine or impute an appropriate income for Mother and, in light of that income amount, determine an appropriate figure for necessary work-related child care expenses in accordance with the guidelines. With a presumptive child support amount, the court can determine whether there is a significant variance between that amount and Father's current child support obligation.

CONCLUSION

The decision of the trial court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion. We decline to grant Mother's request for her attorney fees on appeal. Costs of appeal are assessed equally to both parties and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE