IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 9, 2013 Session

## MELISSA L. BLACKSHEAR (THOMPSON) v. STEPHEN D. BLACKSHEAR

Appeal from the Circuit Court for Hamilton County
No. 03D1987      W. Neil Thomas, III, Judge

No. E2012-02499-COA-R3-CV-FILED-MARCH 19, 2014

This appeal arises from the parties' post-divorce issues. The father moved to modify his child support obligation because of a significant variance in his income. Following a hearing, the trial court modified the father's child support obligation from $2,000 a month to $73 per month, awarded a $21,124 judgment against the mother for overpayment, and awarded the father attorneys's fees in the amount of $10,000. The mother appeals. We vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Barry L. Gold, Chattanooga, Tennessee, for the appellant, Melissa L. Blackshear (Thompson).

John P. Konvalinka and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellee, Stephen D. Blackshear.

## OPINION

### I. BACKGROUND

Melissa L. Blackshear (Thompson) ("Mother") filed for divorce from Stephen D. Blackshear ("Father") on October 16, 2003. The parties were divorced on August 17, 2005. Pursuant to the negotiated marital dissolution agreement and the permanent parenting plan ("the Plan"), Father agreed to pay $2,000 per month for the two minor daughters of the

parties "in accordance with the Tennessee Child Support Guidelines." There is no language in the final decree or the Plan indicating that the amount of child support was a deviation from the Tennessee Child Support Guidelines ("the Guidelines"). Father also agreed to pay Mother alimony in solido of $500 per month for 60 months.

Father's businesses, two S-Corporations, involve building, owning, and renting billboard advertising space. Father is the sole shareholder and sole officer of Vista Outdoor Advertising, Inc. ("Vista") and Lookout Advertising, Inc. ("Lookout"). Lookout appears to be inactive. Vista was formed in 1999 with a loan of $300,000 from Father. It has no employees and Father only receives commissions periodically. In July 2011, Father filed a petition for contempt and to modify. He asserted that his income had substantially decreased while Mother's had substantially increased, resulting in a significant variance. Numerous continuances occurred as Mother changed attorneys several times. The trial of this matter was held on April 13 and May 24, 2012.

Mother questions Father's credibility. Mother states that Father's reported income in 2004 was -$2,229 and in 2005 was -$29,525, yet Father agreed to pay $2,000 per month child support and $500 per month alimony at that time. She contends therefore that no variance can be shown currently when Father agreed to an annual child support/alimony obligation of $30,000 despite previously reporting no income. When asked why he agreed to pay that amount, Father testified that "the attorneys came up with a calculation that we agreed on. Well, the attorneys agreed on, based on income I was making at that time . . . ." Father further acknowledged that in 2005, he had to take "some draws on some savings accounts." In 2008, Father's income tax return revealed capital gains of $159,424 from the sale of a billboard. His 2009 income tax return denoted reported income of $417,747. According to Mother, Father's income has always been derived from capital gains received when he sold a billboard. In 2010, Father claimed to have no income, but he made several expensive purchases. He opened a personal money market account that year with an opening deposit of $200,000. Mother contends there is no testimony of record regarding the source of the $200,000. Mother argues that there is no competent proof of Father's gross monthly income sufficient to establish a "significant variance" requiring modification of Father's child support obligation.

Angela Dowis, the certified public accountant ("CPA") for Father and his businesses, testified that she has prepared Father's personal tax returns and business tax returns from 2003 through the hearing date. To assist her in preparing the tax returns, Dowis receives from Father his personal and business bank statements, deposit tickets and check stubs. She reviews Father's checks, the posting of his checks, and the posting of his deposits. Dowis and/or someone in her office also handles the billing for the businesses and reconciles Father's bank accounts.

Father's individual and corporate tax returns for 2010 and 2011 reflect the following:

* 2011 1120S for Vista Outdoor Advertising Inc. reflects Ordinary Business loss of a -$35,468.

* 2010 1120S for Vista Outdoor Advertising Inc. reflects Ordinary Business loss of a -$45,121.

* 2011 corporate income tax return for Lookout Advertising, Inc. reflects Ordinary Business loss of a -$78.

* 2011 Individual Tax Return reflects -$35,190 in adjusted gross income.

* 2010 Individual Tax Return reflects -$58,022 in adjusted gross income.

Via Dowis's testimony, Father contends his decrease in income in 2010 and 2011 is reflected on the Vista corporate tax returns. Specifically, Schedule L reflects that the loan Father made to Vista decreased in the net amount of $10,579 during the calendar year (the difference between $316,579 and $306,000). In addition, on the 2011 corporate tax return, Vista's notes owed to banks and other institutions increased by $43,440 (the difference between $97,903 and $141,343). Vista's accounts payable to vendors increased in 2011 by $32,261 (the difference between $2,470 and $34,731). Accordingly, the forms reveal that Father's total indebtedness to third party banks and vendors increased in the amount of $75,701 in 2011. Dowis testified that despite Father having no net income, he does have certain "cash flow" from Vista each month, but that it was no more than $2,500 in any month during 2010 and 2011.

According to Dowis, Father was borrowing money and depositing it and personal funds into Vista to pay bills. She noted that Father has not paid himself a commission in a few years but "was paid back on some of his loans that he put in." According to Dowis, the 2011 tax return "did not show any income because Vista owed [Father] money, so we put it against – any moneys he took out personally, we put against the loan." She stated that Father's personal expenditures from Vista are all "accounted for," and are either "charged to his loan," not deducted, or "charged to his income." Dowis opined that the bad economy has greatly decreased, if not completely depleted Father's income. She related that the income produced by the corporations has dropped 40 percent recently and revenues continue to decline. Dowis noted that the billings for Vista are less than half what they were in 2004 and 2005, while the expenses have not decreased. Dowis stressed that she does not sign a

tax return when she has any reservations as to its accuracy.

Mother posits that the only evidence before the court regards Father's income from the corporations. She maintains that Dowis prepares Father's tax returns and keeps his books using the information he provides to her. Accordingly, Mother argues that Dowis has no way of knowing about income that Father does not disclose. Dowis admitted that she did not keep books for Father's personal accounts. Father did not testify regarding his gross monthly income.

In its memorandum opinion, the trial court noted:

The issue with respect to modification of child support hinges upon [Father]'s income, since [Mother]'s income, the number of days with each parent and the monthly expenses with respect to the children are not in dispute. With respect to [Father]'s income, [Father]'s certified public accountant testified that in the years 2010 and 2011 [Father] suffered a significant loss because of the decline in revenue for his businesses. She testified that [Father]'s monthly cash flow during those two years did, however, amount to $2,500. Although [Mother] advanced several arguments with respect to understated income which must be considered by the Court, there is no compelling evidence either in the loans to or from shareholders, commissions or initial calculation of child support to refute the testimony of the certified public accountant with respect to the losses incurred by the companies of [Father] or in [Father]'s losses which are reported on his 2010 and 2011 income tax returns. An argument was advanced with respect to capital gains incurred by [Father]. Those gains must be averaged over the life of the asset, not in the year in which they were incurred. *Alexander v. Alexander*, 34 S.W.3d 456 (Tenn. Ct. App. 2000). Accordingly, they will not be considered. Child support will, therefore, be calculated with the stipulated days, [M]other's income and [F]ather's income as found herein.

With respect to unreimbursed medical expenses, the exhibits submitted by [Mother] with respect to those expenses [are] unreliable in many respects and cannot be used in the calculation of unreimbursed medical expenses. That claim will, therefore, be denied.

Finally, no evidence was submitted as to the unpaid orthodontic bills which can be relied upon by the Court. Accordingly, that claim will be denied.

For the foregoing reasons, [Father]'s petition for modification will be granted and counsel for [Father] is requested to submit an order consistent with the

findings contained herein.

The court provided in its final order as follows:

1. That [Father]'s Petition for Modification is granted and the amount of child support is hereby modified to be the amount of $73.00 per month based upon the calculation in accordance with the child support guidelines . . . retroactively to July 29, 2011.

2. [Father] shall have a judgment against [Mother] for the overpayment of $21,124.00 for which execution may issue.

3. That [Father] is awarded a judgment against [Mother] for his attorney's fees in the amount of $10,000.00, for which execution may issue.

4. That [Mother]'s claim for unreimbursed medical expenses is denied.

5. That [Mother]'s counterclaim for unpaid orthodontic bills is denied.

6. That the costs of this cause are taxed against [Mother], for which execution may issue.

Mother filed a timely notice of appeal.

## II. ISSUES

We restate the issues raised by Mother in this appeal as follows:

1. Whether a significant variance exists to modify child support from $2,000 to $73 a month;

2. Whether the trial court erred in awarding a judgment against Mother for $21,124 to retroactively reimburse Father for past paid child support;

3. Whether the trial court erred in awarding a judgment against Mother for $10,000 in attorney's fees.

## III. STANDARD OF REVIEW

Our review is de novo upon the record, accompanied by a presumption of the correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Davis v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Morrison v. Allen*, 228 S.W.3d 417, 425 (Tenn. 2011).

In matters of divorce and child custody, trial courts are vested with broad discretion, and appellate courts will not interfere with the trial court's decision except upon a showing of erroneous exercise of that discretion. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 836-37 (Tenn. Ct. App. 1997). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)).

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. *See Tenn-Tex Props. v. Brownell-Electro, Inc.*, 778 S.W.2d 423, 425-26 (Tenn. 1989). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315-16 (Tenn. 1987).

## IV. DISCUSSION

### A. CHILD SUPPORT

Modification of child support in this state is governed by Tennessee Code Annotated section 36-5-101(g). *Kaplan v. Bugalla*, 188 S.W.3d 632, 636 (Tenn. 2006). "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240-2-4. Trial courts have discretion to set the amount of child support within the strictures of the Guidelines promulgated by the Tennessee Department of Human Services. Accordingly, we review a trial court's decision involving child support for an abuse of

discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). In reviewing the trial court's decision we consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *Id.*

In *Jones v. Jones*, No. M2009-01512-COA-R3-CV, 2010 WL 2025403 (Tenn. Ct. App. May 20, 2010), we observed as follows:

> Parties are free to agree "to a child support obligation that exceeds the amount payable directly to an obligee parent under the Guidelines and to a method of calculating child support that differs from the mechanism contemplated by the Guidelines as long as the resulting child support meets or exceeds the amount mandated under the Guidelines." *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006) superseded by statute on other grounds as stated in *Moore v. Moore*, 254 S.W.3d 357, 360 n. 5 (Tenn. 2007) (citing Tenn. Code Ann. § 36-5-101([j])). "'[S]ettlement agreements made during or in contemplation of litigation are enforceable as contracts.'" *Allison v. Hagan*, 211 S.W.3d 255, 260 (Tenn. Ct. App. 2006) (quoting *Barnes v. Barnes*, 193 S.W.3d 495, 496-97 (Tenn. 2006)). However, "[a]n agreement between parties 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority 'loses its contractual nature' when merged into a divorce decree." *Id.* (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)). "Because the provision merges into the decree, the child support obligation is subject to modification by the trial court." *Id.* (citing Tenn. Code Ann. § 36-5-101(a); *Penland*, 521 S.W.2d at 224). If an obligor spouse agrees to provide more child support than is required under the Guidelines, the obligor "does not pay support that is 'outside' the Guidelines" such that it is not subject to modification. *Id.* at 643. "To the contrary, the additional amount of child support paid by the obligor continues to be 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support his children during minority." *Id.* (citing *Wade v. Wade*, 115 S.W.3d 917, 921 n. 2 (Tenn. Ct. App. 2002)). Accordingly, "any agreement between the parents regarding the payment of child support of a minor child is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree." *Id.*

*Id.* at *4. The Guidelines provide that if a negotiated agreement – as we had in this case – does not comply with Guidelines or contain findings of fact necessary to support a deviation, the court shall reject the agreement. *See* Tenn. Comp. R. & Regs. 1240-2-4-.01(2)(b)1(ii).

There were no such findings of facts contained in the Plan, and the Plan specifically provided that it was done in accordance with the Guidelines. Mother's own witness, Attorney North, testified that there was no deviation from the Guidelines in determining Father's prior $2,000 per month obligation. Accordingly, we conclude the trial court correctly found that there was no deviation in the August 17, 2005 child support order.

Father's 2005 agreement regarding child support is subject to modification. On this issue, the *Jones* court further instructs us:

> "The modification of child support is governed by Tennessee Code Annotated section 36-5-101(g)." *Wine v. Wine*, 245 S.W.3d 389, 393 (Tenn. Ct. App. 2007). The initial inquiry is "whether there is a 'significant variance' between the current obligation and the obligation set by the Guidelines." *Id.* at 394; *see* Tenn. Code Ann. § 36-5-101(g)(1). Tennessee Code Annotated section 36-5-101(g)(1) provides that the trial court shall increase or decrease child support upon finding a significant variance "unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed."[1] Father, as the party seeking the modification, bears the burden of proving the existence of a significant variance. *Wine*, 245 S.W.3d at 394.

*Id.* at *5. Since there was no deviation in the prior child support order, we are only required to compare the current presumptive child support order with the prior child support order to determine if there is a 15 percent variance. The Guidelines describe a significant variance as the following:

> at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order or, if the tribunal determines that the

---

[1] The Guidelines similarly provide:

Upon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified.

Tenn. Comp. R. & Regs. 1240-2-4-.05(5).

Adjusted Gross Income of the parent seeking modification qualified that parent as a low-income provider, at least a seven and one-half percent (7.5% or 0.075) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order.

Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c).

Income for purposes of the calculation of child support is defined as:

[I]ncluding, but not necessarily limited to: wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program, profit sharing, interest, annuities, and other income due or to become due to the obligor.

Tenn. Code Ann. § 36-5-501(a)(1). For purposes of the Guidelines, income includes: interest income, dividend income, trust income, net capital gains, and "[g]ifts that consist of cash or other liquid instruments, or which can be converted to cash." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a).

The trial court determined that Father's current gross income for purposes of the child support calculation should be $2,500 per month. The court relied upon Dowis's testimony that Father suffered a significant loss of income in 2010 and 2011 due to the decline in revenue for his businesses and had no more than $2,500 per month in "cash flow."

Like the father in *Jones*, Father controls the cash flow of his business and uses business cash to pay his child support and other expenses. As noted in our opinion in that case, "[t]he fact that some tax returns reflect a loss . . . is not surprising and is typical when the owner controls the gross receipts and has ability to borrow, repay loans and pay personal expenses out of the business accounts." *Jones*, 2010 WL 2025403, at *6. Similarly, in *Pruett v. Pruett*, E2007-00349-COA-R3CV, 2008 WL 182236, *8 (Tenn. Ct. App. Jan. 22, 2008), we observed:

[W]e are not unmindful that Father can treat money taken in by these companies and paid out to him as a loan repayment of money loaned by him and thereby avoiding any income tax liability. This is perfectly legal. However, this does not mean that none of the money coming in to the businesses and to Father should be considered as income for purposes of calculating child support. . . . Our adoption of Father's position would mean that a parent in the financial situation and control of a business such as

-9-

Father's could successfully avoid paying any child support by loaning money to his business and then receiving from that business during his children's minority only "loan repayments." Such a result would be untenable.

*Id.* at *8.

Mother argues that the trial court is required to average at least three years to include capital gains received by Father in 2009 in the gross income calculation. She asserts that had the court averaged Father's income for the period 2009-2011, Father's annual income would be $110,031, resulting in a gross monthly income of $9,169, rather than the trial court's finding of $2,500 in "cash flow." She observes that a recalculation of the child support worksheet using the $9,169 gross monthly income figure results in a reduction of Father's support obligation from $2,000 per month to $1,006 per month.

We find it unclear whether the trial court properly determined Father's income in defining it as "cash flow." The Guidelines denote that "[v]ariable income . . . shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(b). In *Alexander*, we concluded that capital gains from the sales of stock that occurred two years preceding the filing of the modification petition should be included when calculating the father's actual income that is variable in nature. *Id.*, 34 S.W.3d at 460. Under the facts of this case, we believe it is appropriate to average Father's variable income for the years 2009-2011 in order to accurately calculate Father's true income for child support purposes. The prorated amount of the 2009 capital gain must be averaged with any income from 2010 and 2011 in order to realistically determine Father's child support obligation. *See Moore v. Moore*, 254 S.W.3d 357, 359-60 (Tenn. 2007). "The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009).

We therefore vacate the trial court's ruling with regard to Father's income for purposes of child support and remand this matter for further proceedings resulting in specific findings of fact and conclusions of law outlining the basis for the court's calculation. In its discretion, the trial court may want to consider the appointment of a special master.

In that Father has not carried his burden of establishing his true child support obligation, any reimbursement award or credit must be reconsidered by the trial court. On the fee issue, it is clear that Father successfully defended Mother's claims that uncovered medical expenses and orthodontic expenses were owed, for which he incurred attorney's fees. Therefore, this issue is remanded for review to determine a reasonable fee.

## V. CONCLUSION

For the foregoing reasons, the judgment of the trial court is vacated, and the case is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed to the appellee, Stephen D. Blackshear.

_____
JOHN W. McCLARTY, JUDGE