IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 4, 2024 Session

## STEPHANIE PAIGE ROPER (NOW STEPHANIE PAIGE BRUCE) v. WESLEY GARRETT ROPER

**Appeal from the Chancery Court for Cheatham County**
**No. 18607, 2017-CV-368   Suzanne Lockert-Mash, Judge**

_____

### No. M2024-00298-COA-R3-CV

_____

In this post-divorce dispute, a father petitioned to modify the permanent parenting plan and child support.  The mother counterpetitioned for civil contempt alleging the father had willfully violated the parenting plan.  After a bench trial, the court denied the father's petition and held him in civil contempt.  Because the evidence preponderates in favor of a finding of a material change in circumstance sufficient to modify the residential parenting schedule, we vacate the denial of the father's petition to modify the parenting plan and remand for the court to determine whether modification is in the child's best interest.  We reverse the court's decision to hold the father in civil contempt for failure to maintain insurance coverage because the decision lacked sufficient factual support.  Given our disposition of these issues, we also vacate the court's award of attorney's fees to the mother as the prevailing party.  Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Reversed in Part; Affirmed in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., C.J., and ANDY D. BENNETT, J., joined.

Karla C. Miller, Nashville, Tennessee, for the appellant, Wesley Garrett Roper.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, Stephanie Paige Roper.

## OPINION

## I.

A.

Wesley Garrett Roper ("Father") and Stephanie Paige Roper ("Mother") divorced in 2018. As part of the divorce decree, the trial court adopted and incorporated an agreed permanent parenting plan for their two-year-old child. The parenting plan named Mother the primary residential parent and gave her sole decision-making authority. It limited Father to 29 residential parenting days and specified that any additional parenting time was at Mother's discretion. It also required Father to pay $1,200.00 per month in child support, an agreed downward deviation.

The parties agreed to this unusual parenting arrangement to alleviate Mother's concerns about Father's home environment. Mother objected to the child spending time with Father's girlfriend because she had a criminal record. And she believed Father's residence, a rustic cabin, was unsafe for a toddler.

Four years later, Father petitioned to modify the parenting plan and child support. He alleged several material changes had occurred since the divorce warranting modification of the residential parenting schedule. Among other things, Father had remarried, obtained a better home, and changed jobs. With Mother's permission, he consistently exercised substantially more than his allotted parenting time. He also asserted that changes to the parents' incomes created a significant variance sufficient to modify child support.

Mother opposed Father's modification requests. She sought to hold him in civil contempt for violating the parenting plan. Mother alleged that Father "failed and refused" to pay his share of the child's uninsured medical expenses and to obtain required life insurance coverage.

B.

The court held a two-day trial on the petitions. Only Father and Mother testified. Much of the proof was undisputed.

Six years after entry of the agreed plan, the parties' circumstances had changed remarkably. Father had married his girlfriend ("Stepmother"), who assumed an active role in the child's life. Father lived in a safe and suitable home with Stepmother and her two children. Mother acknowledged that she no longer had any concerns about Stepmother's character. Mother and Stepmother worked well together and communicated frequently about the child. So Mother routinely allowed Father a significant amount of additional parenting time. The child spent every other weekend with Father plus a week in the summer. Mother and Father usually split time with the child on major holidays. The child, now eight years old, enjoyed spending time with Father and his family. He got along well with Stepmother and his stepsiblings.

Father sought a reduction in child support based on alleged changes to the parties' respective incomes. It was undisputed that Mother's gross income had increased to $67,000 since the divorce. But the proof of Father's gross income was contradictory and confusing.

After his remarriage, Father voluntarily quit his job as a service technician at Piedmont Natural Gas and took a lower paying position at his wife's trucking company. Father had only a rudimentary knowledge of his finances. He "guestimate[d]" from his paychecks that his current gross income was "roughly about $52,000" a year, or $4,333 a month. But his 2022 federal income tax return and his discovery responses cast doubt on his testimony. The additional tax forms Father produced only added to the confusion. When pressed about these discrepancies, he claimed he was "not familiar with all the tax stuff and paperwork."

Mother maintained that Father failed to pay his share of the child's medical expenses as required in the agreed plan. She claimed that she had paid all the child's out-of-pocket medical expenses since the divorce. Although she notified Father when she received medical bills, he never paid anything. Typically, she would give him copies of the bills, either by email or in person. Eventually, she stopped providing any documentation, believing it was useless.

For his part, Father conceded that Mother sent him information about the child's medical expenses. But he complained that she never sent him "any actual bills." If she had, he insisted that he would have paid. Confronted with a copy of an email from Mother requesting $670 for his share of the child's dental expenses, Father verified that the email address was correct. But he could not recall whether he ever received her message or the attached dental bill.

According to Mother, the plan also required Father to obtain life insurance coverage. She never received any proof of coverage. So she was "not sure" whether Father had the required policy. Apparently, no one thought to ask Father.

After hearing the proof, the court denied Father's petition. It found no basis to modify the parenting schedule or child support. On the other hand, Mother's contempt petition was "well taken." According to the court, Father "willfully and intentionally failed and refused to pay his portion of any of the minor child's uncovered medical expenses." Despite having the ability to pay, he "made the unilateral choice to leave the financial burden solely on the Mother." He also willfully violated the life insurance requirement, in the court's view, because he "offered no proof as to the required life insurance coverage that [he]was ordered to maintain." The court ordered Father to comply with the plan and pay Mother the attorney's fees "incurred in defending and bring this matter before the Court." Father appealed the court's ruling.

3

## II.

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *see, e.g.*, *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Evidence preponderates against a finding of fact when it "support[s] another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). In reviewing the court's findings, determinations of witness credibility are given great weight, and they will not be overturned without clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

## A.

Father's first issue concerns the denial of his petition to modify the residential parenting schedule. Tennessee courts apply the two-step analysis in Tennessee Code Annotated § 36-6-101(a) (2021) to such requests. *See, e.g.*, *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007). The threshold issue is whether a material change of circumstance has occurred since the court's prior custody order. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 697-98. This is a question of fact. *Armbrister*, 414 S.W.3d at 692; *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). If a material change of circumstance is found, the court must decide whether modification is in the child's best interest. *Armbrister*, 414 S.W.3d at 705.

The parent seeking a modification of a permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(C). The change must have occurred after entry of the prior plan. *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007). It must also affect the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C). Even so, the threshold for establishing a material change in this context is low. *See Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). A material change of circumstance may include, but is not limited to:

> significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C).

Father asserted several material changes, including the child's increased age, changes in Father's home and work life, and the parents' deviation from the current parenting schedule. Still, the trial court found no material change of circumstance sufficient to modify the residential parenting schedule. The court reasoned that Mother and Father anticipated these myriad changes. According to Mother, the parties "agreed years ago" that once her concerns about Stepmother's character and Father's home were alleviated, "we would go to a basic parenting plan." But whether the change was reasonably anticipated when the prior plan was entered is irrelevant if the change affects the child's best interest. *Armbrister*, 414 S.W.3d at 703.

The greater convincing effect of the evidence is that a material change of circumstance has occurred. Six years have passed since entry of the prior plan, which suggests the possibility for changes. *See Boyer*, 238 S.W.3d 257 (stating that "the courts and the General Assembly have recognized that material changes in circumstances can arise solely by the passage of time because children's needs change as they grow older."). The child is now an active young boy. Father has remarried, and Stepmother plays a positive role in the child's life. *See Armbrister*, 414 S.W.3d at 705 (recognizing that a parent's remarriage may significantly affect parenting). Mother no longer has any concerns about Stepmother's character or Father's living arrangements. Mother and Stepmother have a good co-parent relationship. Over time, Mother and Father modified the parenting schedule, giving Father significantly more parenting time than specified in the plan. By all accounts, this modified arrangement has been working smoothly for several years. These changes have had a positive impact on the child's wellbeing.

Because the proven facts convincingly established a material change of circumstance under the lower threshold applicable to a petition to modify the residential parenting schedule, we remand this case to determine whether modification to the residential parenting schedule is in the child's best interest. *See id.* at 697-98. Due to the passage of time, on remand, the trial court may, in its discretion, consider additional evidence of the child's best interest.

## B.

Father contends that the court denied his petition to modify child support without considering all the relevant proof. We review child support decisions for an abuse of discretion. *See Smallman v. Smallman*, 689 S.W.3d 845, 868 (Tenn. Ct. App. 2023). A trial court abuses its discretion if it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

A child support order may only be modified upon proof of a significant variance. Tenn. Code Ann. § 36-5-101(g)(1) (2021); TENN. COMP. R. & REGS. 1240-02-04-.05(2)(a). The Child Support Guidelines define a significant variance "as at least [a] fifteen percent

5

(15%) difference in the current support obligation and the proposed support obligation." TENN. COMP. R. & REGS. 1240-02-04-.05(2)(b). The parent seeking modification has the burden of proving "that a significant variance exists." *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007).

We discern no abuse of discretion here. The court must have "current evidence of the parties' circumstances" to determine whether a significant variance exists. *See* TENN. COMP. R. & REGS. 1240-02-04-.05(4) ("To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances."). The first step in calculating child support is the determination of the parents' respective gross incomes. *Hill v. Hill*, No. E2019-02226-COA-R3-CV, 2021 WL 4745384, at *7 (Tenn. Ct. App. Oct. 12, 2021). As he seems to recognize, Father failed to come forward with credible proof of his gross income. The record amply supports the court's finding that Father "professed to know nothing about his income, the family finances and tax filings, and was repeatedly evasive." Without credible proof of Father's gross income, the court lacked a sufficient evidentiary foundation to establish a significant variance. *See Reid v. Reid*, No. M2017-00119-COA-R3-CV, 2018 WL 3912297, at *5 (Tenn. Ct. App. Aug. 15, 2018) (affirming denial of a father's modification petition when "trial court did not have credible evidence from which to determine [his] true income for purposes of the significant variance calculation"); *Scobey v. Scobey*, No. M2016-00963-COA-R3-CV, 2017 WL 4051085, at *8 (Tenn. Ct. App. Sept. 13, 2017) (affirming denial of a father's petition because the trial court lacked sufficient reliable evidence to calculate his current income); *Langlo v. Langlo*, No. E2014-00548-COA-R3-CV, 2015 WL 1810513, at *6 (Tenn. Ct. App. Apr. 20, 2015) (concluding "that the trial court did not err in refusing to modify Father's child support obligation when he failed to present current evidence of the parties' circumstances to establish a significant variance").

To avoid this result, Father suggests that it would have been appropriate for the court to use his old gross income plus Mother's current gross income and work-related childcare expenses to determine whether a significant variance existed. But the significant variance determination must be based on "current evidence" of the parties' respective gross incomes unless the evidence supports imputation of a different amount. TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2). The court may calculate child support based on a parent's "potential income or earning capacity" only after finding the parent "willfully underemployed or unemployed." *Id.* 1240-02-04-.04(3)(a)(2)(ii)(II). The court made no findings about the reasonableness of Father's employment decision or his income potential. *See* TENN. COMP. R. & REGS. 1240-02-04-.04(3)(a)(2). This is not surprising given that Mother never alleged or argued that Father was willfully underemployed. *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003) ("The burden is on the custodial parent to show that the obligor parent is willfully and voluntarily underemployed.").

C.

Father also challenges the court's civil contempt findings. We review a court's decision to hold a person in civil contempt under the abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

A contempt finding stemming from the violation of a court order has "four essential elements." *Id.* at 354 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011). The order allegedly violated must be lawful. *Konvalinka*, 249 S.W.3d at 354. The order must also be clear and unambiguous. *Id.* The individual charged "must have actually disobeyed . . . the order." *Id.* at 355. And the violation must be willful. *Id.* The legality and clarity of the order are questions of law. *Id.* at 356. The remaining two elements are questions of fact. *Id.* at 356-57.

1. Uncovered Medical Expenses

The parenting plan required Father to pay half of the child's "uncovered reasonable and necessary medical expenses" over $75. Father argues that the evidence preponderates against the court's finding that he disobeyed this requirement.

While conceding that he never paid the child's uncovered medical expenses, Father claimed that Mother never properly notified him of the amount owed. Mother testified otherwise. And the court credited Mother's testimony on this point. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) (recognizing that "findings with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case"). We discern no basis to disturb that credibility finding. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Father complains that Mother did not submit sufficient reliable proof of exactly what he owed. Proof at trial established that Father owed $670 for his share of the child's dental bill. Mother did not specify the amount owed for the child's other medical expenses. But the court did not award Mother any compensatory damages. *See Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005) (recognizing that the proper measure of damages for civil contempt "is the actual injury sustained as a result of the contempt"). So more specific proof was unnecessary.

2. Life Insurance Coverage

Father mounts a two-pronged attack on the court's remaining civil contempt finding. First, he claims that the life insurance requirement in the agreed plan was never mandatory. Thus, it could not be enforced in a contempt proceeding. To support a finding of civil

7

contempt, the order allegedly violated must be "clear, specific, and unambiguous." *Konvalinka*, 249 S.W.3d at 355. It must "leave no reasonable basis for doubt regarding [its] meaning." *Id.* at 356.

This part of Mother's contempt petition was based on a conditional life insurance provision in the agreed parenting plan. Specifically, the plan provided:

E. LIFE INSURANCE (not mandatory)

If agreed upon by the parties, the Father shall insure his/her own life in the minimum amount of $50,000.00, by whole life or term insurance. Until the child support obligation has been completed, each policy shall name the child/children as sole irrevocable primary beneficiary, with the Mother as trustee for the benefit of the child(ren), to serve without bond or accounting.

By its plain terms, the life insurance requirement was not mandatory unless "agreed upon by the parties." Mother testified that the parties agreed to this provision. The court apparently credited her testimony. *See Richards*, 70 S.W.3d at 733-34. We discern no basis in this record to disturb the court's finding. *See Wells*, 9 S.W.3d at 783.

Even so, Father insists that Mother failed to prove that he disobeyed this requirement. The court faulted Father for "offer[ing] no proof" on this issue. But it was Mother's burden to show that Father violated the parenting plan, not Father's. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006). The only evidence offered to support this element was Mother's testimony that she "was not sure" whether Father had the required insurance coverage. Although Father also testified, she never asked him whether he had obtained the agreed coverage. This was plainly insufficient to support a finding of actual disobedience. Father's failure to file an answer to the counterpetition does not change this result. Even if Father never filed an answer, Mother's trial testimony undercuts the conclusory contempt allegations in her counterpetition. *See* TENN. R. CIV. P. 8.04.

In sum, the record only supports holding Father in civil contempt for his failure to pay half of the child's "uncovered reasonable and necessary medical expenses" over $75.

D.

Because Father was partly successful on appeal, we deem it appropriate to vacate the trial court's attorney's fee award. By statute, the court had discretion to award reasonable attorney's fees to the prevailing party "in any . . . civil contempt action or other proceeding to enforce . . . child support, or [a] provision of a permanent parenting plan order, or in any suit or action concerning the . . . change of custody of any child[ ]." Tenn. Code Ann. § 36-5-103(c)(2021). Although Mother prevailed in the trial court, our

disposition of the issues on appeal changes the analysis. *See Fannon v. City of LaFollette*, 329 S.W.3d 418, 432 (Tenn. 2010) (recognizing that the "prevailing party" determination is a fact-intensive inquiry). So we vacate the fee award. On remand, the court may consider whether it should exercise its discretion to award attorney's fees to either party based on Tennessee Code Annotated § 36-5-103(c).

Mother requests an award of attorney's fees as damages for a frivolous appeal. Tenn. Code Ann. § 27-1-122 (2017). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). This appeal was not totally devoid of merit. Father was partially successful. So we decline to award fees on this basis.

Like the trial court, we also have the discretion to award fees on appeal under Tennessee Code Annotated § 36-5-103(c). *See Colley v. Colley*, 715 S.W.3d 293, 315 (Tenn. 2025). Both parties request such an award. In exercising our discretion, we consider the purposes behind the statute and the circumstances of the appeal. *Id.* at 316. We grant Mother's request for an award of reasonable attorney's fees incurred on appeal. Mother prevailed by successfully defending against a reduction in child support. *Id.* at 306-07. This Court has recognized that "[t]he allowance of attorney's fees for [an appeal] is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf." *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993). Although Father has also had some success on appeal, when we consider all the relevant factors in this case, we respectfully decline to grant his request for an award of attorney's fees.

## III.

Because the proven facts established a material change of circumstance under the lower threshold of Tennessee Code Annotated § 36-6-101(a)(2)(C), we vacate the denial of Father's petition to modify the parenting plan. We reverse the court's decision to hold Father in contempt for violation of the life insurance requirement because the evidence was insufficient to establish Father's disobedience. But we affirm the court's child support decision and its decision to hold Father in civil contempt for willful failure to pay his share of the child's uncovered medical expenses. Given our disposition, we vacate the court's award of attorney's fees to Mother as the prevailing party. This case is remanded to the trial court for a determination of Mother's reasonable attorney's fees and costs incurred on appeal and for such further proceedings as may be necessary and consistent with this opinion.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE

9